PAGE et ux. v. DICKENS et al.

(Circuit Court, E. D. North Carolina. October 28, 1896.)

1. TRUST DEED—PAYMENT.

Decedent loaned defendant $500 of his own money, and took therefor a bond, with a deed in trust, conveying to himself, as trustee for his niece, defendant's homestead. He made no communication to his niece about the matter, and did not consult her about it, nor did he record the deed. He had also made other loans to defendant, which were unsecured. Defendant became insolvent, and gave to decedent his personal property exemption for the purpose of relieving his homestead. The personalty was sold for $450, and decedent applied the amount specifically towards repaying himself the $500, but did not pay it over to his niece. No mention was made of the matter in his will, but his niece was made residuary legatee of one-half of his estate, by which she would receive much more than such $500. Held, that the bond was discharged to the extent of the $450 realized on the personalty.

2. SAME—SUBSTITUTION OF SECURITY.

Under such circumstances, the personal property exemption was not substituted for the home lot as security for the bond, but the transaction was merely an arrangement for paying the same.

This was an action by R. P. Page and wife, Pattie, against W. B. Dickens and wife and others, to foreclose a deed of trust conveying Dickens' home lot, and appoint a trustee.

J. B. Batchelor and R. O. Burton, for complainants.
John W. Hinsdale and W. H. Day, for defendants.

SEYMOUR, District Judge. The complainants, R. P. Page and wife, bring this suit to foreclose a deed of trust and appoint a trustee. The defendants contend that the bond secured by the deed in trust is in part paid. In September, 1881, one G. V. Hardie, since deceased, loaned to defendant Dickens $500 of his own money, but took therefor a bond with a deed of trust to himself as trustee of the complainant Mrs. Pattie Page. It is evident that he intended a gift to Mrs. Page. As far as appears, he kept the bond, etc., in his possession, made no communication in regard to the matter to Mrs. Page and in no way consulted with her about it, nor did he record it. He subsequently received, in the manner hereinafter stated, property of defendant Dickens, which he sold for $450. He did not directly pay this money to Mrs. Page, but he died leaving property largely in excess of this sum, and made Mrs. Page his residuary legatee of one-half of it. It appears to be conceded that he left her much more than the amount of the bond secured by the deed in trust. Mrs. Page was Hardie's niece. Hardie appears to have been a man without family as well as of considerable means, and the evidence shows that he took a friendly interest in the advancement of the defendant Dickens. He had previously loaned him $200 without taking security, to buy the lot upon which he built his house. The $500 in question was loaned him to enable him to go into business, and he subsequently loaned money to defendant's firm. When defendant was subsequently in difficulty, he went to Hardie, and found the latter upon his death bed. Hardie then said to him: "You have come too late." The deed in trust conveyed Dickens' home lot, the one which he had bought with the first unsecured loan from Hardie, and which he had subsequently improved. These facts are necessary to an understanding of what follows.

Dickens went into business in September, 1881. In April, 1882, the firm failed. The original capital was the $500 which Dickens had borrowed as above and $500 more that his partner had borrowed of his, the partner's, father. Upon the failure the firm made an assignment to one H. B. Dickens, securing as preferred debts the two sums of $500 each, borrowed as above stated, and also $107, which Hardie had loaned to the firm. The other creditors obtained judgments against the concern, issued executions, and sold the partnership property. The assignment seems to have been totally disregarded, and nothing seems to have been done under it. Upon the issuing of these executions the two partners had each his individual personal property exemption under the laws of North Carolina, amounting to $500, assigned to him. The other partner turned over his exemption to his father, and defendant Dickens turned his

over to Hardie. Hardie took it, and had it sold at auction, and himself bid it in for $450. This sum Dickens claims was to have been, and that it actually was, applied upon the bond. The referee so finds, and, indeed, it is impossible, upon considering the relations of the parties, and their conduct, to suppose otherwise. Hardie was dealing with the bond and deed in trust as if they were his own. He knew himself to be abundantly solvent, and did not suppose it material to Mrs. Page how he made his bounty to her effectual, whether by holding the trust deed or by recompensing her by his own security, which was probably better than the trust deed. Under the circumstances it is not to be considered that any dealing by him with the bond and trust could have been a breach of trust. It doubtless appeared to Dickens that he could safely make any arrangement with Hardie to relieve his homestead. He gave him his personal property exemption for that purpose. The assignment was evidently considered out of the way. In any event, Hardie was a lenient creditor, and, these being the facts, it is not probable that Dickens would have denuded himself of the small amount exempted by law for any other purpose. Hardie died in 1885, having disposed of his property by will, appointing no trustee of the trust in suit, but not having, as far as appeared, canceled it, or made any entries of payment on it. Of course, we are deprived of Hardie's evidence. The referee admitted that of defendant Dickens as to the transaction between himself and Hardie, but upon consideration excluded it, under section 590 of the Code of North Carolina. Upon the other evidence he found in favor of defendant upon his plea of payment. I concur with him. The testimony of Emory, Lewis, J. H. Dickens, and Enoch Dickens I think sufficiently supports this view. Emory testifies that at Hardie's sale of the exempted goods Hardie told him that he was going to buy them himself, sell them out at his store, and make his debt. That he had a mortgage on Mr. Dickens' house and lot to secure the loan he had made for the purchase of these goods. Lewis says that Hardie told him he had loaned Dickens $500, with which to buy goods, and he also testifies that about the time of the failure he spoke of having bought Dickens' exemption to repay or secure himself the money loaned him. J. H. Dickens testifies that either just before or just after the sale Hardie said that his money purchased the goods, and that he had to have it back somehow; that some months afterwards Hardie told witness, in answer to a question as to how he was getting on selling these goods, that he had just about finished paying back the money that bought them. Enoch Dickens testifies that Hardie told him that he had loaned W. B. Dickens the money to go into business with, and he intended to take these goods to get as much of it back as he could. If Hardie had taken the assignment of Dickens' exemption with no agreement as to the appropriation of the proceeds of their sale, he would, of course, have been at liberty to appropriate them to his unsecured indebtedness. The above-cited testimony, however, supports Dickens' claim, which is in itself the only probable explanation of his conduct, that it was agreed between him and Hardie that the property assigned to him as his personal property exemption

should clear his home real estate, or at least it shows what amounts to the same thing,—that Hardie did so appropriate it. In either event, the bond was discharged to the amount of $450 paid for the exempt property. If it be considered that by receiving the $450 Hardie made himself liable to that amount to the feme plaintiff, that can make no difference with this action. Hardie then owed Mrs. Page $450. Whether his disposition in her favor was or was not a payment of that debt we need not consider. Counsel for complainants say, however, that the receiving by Hardie of the personal property exemption and substituting it for the bond secured by Dickens' home lot was in itself on its face a breach of trust; that Dickens was a party to such breach; and that, therefore, the transaction was void, and the bond still remains. It is sufficient to say, in answer to this, in addition to what has already been said, that there was no substitution of the Dickens exemption for the Dickens home lot as security for the bond. It was simply an arrangement for paying the bond. Dickens paid it to Hardie, the trustee. He was not bound, under the decisions in North Carolina, to see to the payment to the cestui que trust of the money received by Hardie. If, indeed, he were so bound, Hardie would be primarily liable. In any point of view defendant is entitled to what he claims,—a credit of $450 on the bond. This disposes of all the exceptions made by counsel for complainants, or renders their consideration unnecessary. The exceptions are overruled, and judgment will be rendered in accordance with the finding of the referee.